UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HERBERT A. PIERRE, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2151** |
| **N. BURL CAIN, WARDEN** | **SECTION "F"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.  Factual Background**

The petitioner, Herbert A. Pierre, Jr. ("Pierre"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On August 17, 2000, Pierre was charged by bill of information in Jefferson Parish with one count of simple burglary of an inhabited dwelling owned

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 4.

by Marilyn Williams, one count of armed robbery of Keokuk Wilson, and one count of armed robbery of Diane Martin.[3]

The record reflects that, at approximately 2:00 p.m. on July 3, 2000, Pierre entered the Regions Bank on Belle Chasse Highway, wearing black pants, a black hat and black sunglasses.[4] He waited in line and, when he approached the window of teller Keokuk Wilson, he told her that he wanted to make a withdrawal. Pierre put a blue Wal-Mart bag, which had something red inside, on the counter. He pulled up his shirt to reveal a gun tucked in his pants. Wilson began putting money into the bag at which time Pierre pulled out his gun, pointed it at her, and told her not to press any buttons. Unbeknownst to him, Wilson managed to press two buttons, one which activated a camera that took still pictures and another that called the police.

As Pierre was leaving the bank, Wilson told her colleagues that she had been robbed. Gary Laigast, an employee of Regions Bank, saw Pierre as he left the bank. Another employee indicated that she saw Pierre run across Belle Chasse Highway and over the railroad tracks. Laigast looked out of the window and saw Pierre on the other side of the railroad tracks changing out of his black shirt into a red shirt and changing his pants. Laigast got into his car and drove towards the field where he had seen Pierre. On a road near the field, Laigast watched Pierre walking, holding a bag in his hand. He was now wearing a red shirt and shorts. When Pierre saw Laigast, he ran and jumped across a canal. Laigast then saw Pierre jump over a fence and into the backyard of a house on Hickory Street. The house belonged to Marilyn Williams.

---

[3] St. Rec. Vol. 1 of 10, Bill of Information, 8/17/00.

[4] The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Pierre*, 834 So.2d 1229, 1230-31 (La. App. 5th Cir. 2002); St. Rec. Vol. 1 of 10, 5th Cir. Opinion, 02-KA-838, 12/30/02.

2

Williams was in her swimming pool doing exercises when the police arrived at her house. Williams allowed the police to search her home. The police found Pierre hiding under a bed in the guest bedroom. Pierre was now wearing a grey T-shirt with "Army" written across the front and grey sweat pants over a pair of shorts. Williams testified that the grey shirt and sweat pants belonged to her. She also stated she had last seen the shirt in a basket on top of the washing machine in the garage and the pants had been hanging in a closet in one of the spare rooms. Approximately $8,000, the amount taken from the bank, was found in the left front pocket of Pierre's shorts.

Pierre admitted at trial that he went into the house on Hickory Street and hid under the bed. He claimed that he went into the house because he saw a man on the street with a gun and he feared for his life. He denied that he had been in the Regions Bank on Belle Chasse Highway that day.

Pierre was tried for the simple burglary of Williams's residence and the armed robbery of Wilson before Judge Greg Gerard Guidry on September 26, 2001, and was found guilty as charged on both counts.[5] At a hearing held on October 23, 2001, the Trial Court denied Pierre's motions for a new trial and for post-verdict judgment of acquittal.[6] The State also entered a nolle prosequi as to the third count of the bill of information.[7]

---

[5] St. Rec. Vol. 2 of 10, Trial Minutes, 9/26/01; St. Rec. Vol. 8 of 10, Trial Transcript, 9/26/01.

[6] St. Rec. Vol. 2 of 10, Minute Entry, 10/23/01; Motion for Post-Verdict Judgment of Acquittal, 10/23/01; Trial Court Order, 10/23/01; Motion for New Trial, 10/23/01; Trial Court Order (2), 10/23/01; St. Rec. Vol. 8 of 10, Motion Hearing Transcript, 10/23/01.

[7] *See* St. Rec. Vol. 1 of 10, Bill of Information, as amended (with incorrect count number), 8/17/00.

On October 24, 2001, the Trial Court sentenced Pierre to serve 12 years in prison for the simple burglary count and 80 years in prison for the armed robbery count.[8] The Court denied Pierre's motion to reconsider the sentences.[9]

The State also filed a multiple offender bill related to the armed robbery conviction.[10] On January 8, 2002, the Trial Court held a hearing on the multiple bill.[11] Pierre refused to be fingerprinted and the Court held him in contempt.[12] At the next hearing held January 15, 2002, Pierre again refused to be fingerprinted.[13] The Trial Court found him to be in contempt and sentenced him to serve six months in parish prison to run consecutive to any other sentences imposed. The Court also ordered that the fingerprints be taken at the prison prior to the next hearing.

On April 10 and 11, 2002, the Trial Court held hearings on the multiple bill.[14] The Court found Pierre to be a multiple offender and denied his Motion to Dismiss the Multiple Bill.[15] The Trial Court re-sentenced Pierre on April 12, 2002, on the armed robbery conviction to serve 80 years

---

[8] St. Rec. Vol. 2 of 10, Sentencing Minutes, 10/24/01; St. Rec. Vol. 8 of 10, Sentencing Transcript, 10/24/01.

[9] *Id.*; St. Rec. Vol. 2 of 10, Motion to Reconsider Sentence, 10/24/01; Trial Court Order, 10/24/01.

[10] *Id.*; St. Rec. Vol. 2 of 10, Multiple Bill, 10/24/01.

[11] St. Rec. Vol. 2 of 10, Minute Entry, 1/8/02.

[12] *Id.*

[13] St. Rec. Vol. 2 of 10, Minute Entry, 1/15/02.

[14] St. Rec. Vol. 2 of 10, Multiple Bill Hearing Minutes, 4/10/02; Multiple Bill Hearing Minutes, 4/11/02; St. Rec. Vol. 8 of 10, Multiple Bill Hearing Transcript, 4/10/02.

[15] St. Rec. Vol. 2 of 10, Minutes of Multiple Bill Hearing, 4/11/02; Motion to Dismiss Multiple Bill, 4/10/02; Order, 4/11/02.

in prison as a multiple offender without benefit of parole, probation, or suspension of sentence.[16] The Court also denied Pierre's motion to reconsider the sentence.[17]

On appeal, Pierre's counsel argued that the sentences were excessive and the trial court failed to articulate the reasons for the sentences.[18] On December 30, 2002, the Louisiana Fifth Circuit Court of Appeal affirmed Pierre's convictions and sentences.[19] The Court also remanded the matter with instructions for the Trial Court to advise Pierre of the delays for seeking post-conviction relief. The Trial Court complied on January 8, 2003.[20] The Louisiana Fifth Circuit also refused to consider Pierre's request for rehearing on February 3, 2003.[21]

Pierre filed a timely[22] writ application in the Louisiana Supreme Court, which the Court denied without stated reasons on October 17, 2003.[23] Pierre's conviction became final 90 days later, on January 15, 2004, since he did not file a writ application with the United States Supreme Court. *See Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)).

---

[16]St. Rec. Vol. 2 of 10, Multiple Bill Sentencing Minutes, 4/12/02; St. Rec. Vol. 8 of 10, Multiple Bill Sentencing Transcripts, 4/12/02.

[17]*Id.*; St. Rec. Vol. 2 of 10, Motion to Reconsider Sentence, 4/12/02; Trial Court Order, 4/12/02.

[18]St. Rec. Vol. 8 of 10, Appeal Brief, 02-KA-0838, 9/13/02.

[19]*State v. Pierre*, 834 So.2d at 1229; St. Rec. Vol. 1 of 10, 5th Cir. Opinion, 02-KA-838, 12/30/02.

[20]St. Rec. Vol. 2 of 10, Trial Court Notice, 1/8/03.

[21]St. Rec. Vol. 1 of 10, 5th Cir. Opinion, 02-KA-838, p. 7, 12/30/02.

[22]La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment.

[23]*State v. Pierre*, 855 So.2d 755 (La. 2003); St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2003-KO-0508, 10/17/03; La. S. Ct. Writ Application, 03-KO-0508, 2/18/03 (dated 1/27/03); St. Rec. Vol. 1 of 10, La S. Ct. Letter, 2003-KO-0508, 2/18/03 (showing postmark 1/28/03).

## II. State Procedural Background

On September 4, 2004, Pierre submitted an Application for Post Conviction Relief with the Trial Court on two grounds for relief:[24] (1) Counsel gave ineffective assistance because he: failed to object to Pierre's prison attire at the motion to suppress hearing on January 30, 2001; failed to properly cross-examine Wilson on her identification testimony at the trial on September 26, 2001; failed to charge the court; failed to properly cross-examine Laigast about the identification; failed to cross-examine Laigast on other grounds; failed to object to the photographic lineup introduced at trial that contradicted the witnesses' identifications; failed to challenge Laigast's testimony; failed to object to identification by Deputy Jones; and failed to cross examine John Carroll; (2) he was denied the right to confrontation where Laigast testified as to things seen by others, victim testimony regarding bank policy was not supported by evidence, and the simple burglary conviction was not based on the evidence presented. The Trial Court denied the application on September 29, 2004.[25]

Pierre sought timely review of that ruling in the Louisiana Fifth Circuit on October 27, 2004.[26] The Court denied the application on November 5, 2004, finding no error in the Trial Court's ruling.[27] On November 29, 2005, the Louisiana Supreme Court also denied without stated reasons Pierre's writ application to that Court.[28]

---

[24] St. Rec. Vol. 3 of 10, Application for Post Conviction Relief, 9/17/04 (dated 9/4/04).

[25] St. Rec. Vol. 3 of 10, Trial Court Order, 9/29/04.

[26] The record does not contain a copy of this writ application. The filing date appears on the face of the Court's order and was confirmed with the office of the clerk of the Louisiana Fifth Circuit. *See* St. Rec. Vol. 9 of 10, 5th Cir. Order, 04-KH-1283, 11/5/04.

[27] St. Rec. Vol. 9 of 10, 5th Cir. Order, 04-KH-1283, 11/5/04.

[28] *State ex rel. Pierre v. State*, 916 So.2d 154 (La. 2005); St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2004-KH-3166, 11/29/05; La. S. Ct. Writ Application, 04-KH-3166, 12/21/04 (dated 11/16/04); St. Rec. Vol. 3 of 10, La. S. Ct. Letter, 2004-KH-3166, 12/21/04 (showing postmark 11/18/04).

In the meantime, on January 3, 2005, Pierre submitted another application for post-conviction relief to the Trial Court challenging his multiple offender proceedings, the sufficiency of the evidence, and the ineffective assistance of his appellate counsel.[29] On January 11, 2005, the Trial Court denied the application as procedurally barred and successive pursuant to La. Code Crim. P. art. 930.4(E).[30] The Louisiana Fifth Circuit also denied Pierre's subsequent writ application on February 11, 2005, finding no error in the Trial Court's ruling.[31]

Pierre submitted a third application for post-conviction relief to the Trial Court on February 21, 2005.[32] He alleged that he was actually innocent because the identification evidence was insufficient, he was actually innocent because the evidence was insufficient to support the armed robbery conviction and appellate counsel was ineffective for failure to raise these claims on appeal. The Trial Court denied relief on March 3, 2005, finding that Pierre had failed to establish a basis for his actual innocence claim and for failure to establish ineffective assistance of counsel.[33] Although Pierre filed a notice of intent, he did not seek review of this order.[34]

Instead, on March 28, 2005, Pierre submitted his fourth application for post-conviction relief to the Trial Court alleging his actual innocence based on counsel's failure to bring proper evidence

---

[29]St. Rec. Vol. 3 of 10, Uniform Application for Post Conviction Relief, 1/7/05 (dated 1/3/05).

[30]St. Rec. Vol. 3 of 10, Trial Court Order, 1/11/05.

[31]St. Rec. Vol. 4 of 10, 5th Cir. Order, 05-KH-134, 2/11/05. The record does not contain a copy of this writ application. The filing date of February 4, 2005, appears on the face of the order and was confirmed with the office of the clerk of the Louisiana Fifth Circuit.

[32]St. Rec. Vol. 4 of 10, Uniform Application for Post Conviction Relief, 2/28/05 (dated 2/21/05).

[33]St. Rec. Vol. 4 of 10, Trial Court Order, 3/3/05.

[34]St. Rec. Vol. 4 of 10, Notice of Intent, 3/28/05; Trial Court Order, 3/31/05.

and prosecutorial misconduct in presenting perjured and false testimony.[35] The Trial Court denied relief on April 6, 2005, finding the application to be procedurally barred from review and as successive pursuant to La. Code Crim. P. art. 930.4(D).[36]

The Louisiana Fifth Circuit denied Pierre's subsequent writ application on May 4, 2005, finding no error in the Trial Court's ruling.[37] The Louisiana Supreme Court also denied his timely,[38] related writ application to that Court without stated reasons on March 17, 2006.[39]

On August 1, 2007, Pierre submitted to the Trial Court a motion seeking to correct his sentence.[40] The Trial Court found the motion untimely under La. Code Crim. P. 882, construed the motion as an application for post-conviction relief and denied relief finding it to be untimely under La. Code Crim. P. art. 930.8.[41] On October 4, 2007, the Court also denied his request for reconsideration.[42]

---

[35] St. Rec. Vol. 4 of 10, Uniform Application for Post Conviction Relief, 4/4/05 (dated 3/28/05).

[36] St. Rec. Vol. 4 of 10, Trial Court Order, 4/6/05.

[37] St. Rec. Vol. 9 of 10, 5th Cir. Order, 05-KH-465, 5/4/05; St. Rec. Vol. 4 of 10, unfiled copy of 5th Cir. Writ Application, filed in Trial Court 4/28/05.

[38] St. Rec. Vol. 4 of 10, Trial Court Order (granting to 5/16/05 to file writ), 4/26/05; Notice of Intent, 4/21/05 (dated 4/18/05).

[39] *State ex rel. Pierre v. State*, 925 So.2d 527 (La. 2006); St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2005-KH-1633, 3/17/06; La. S. Ct. Writ Application, 05-KH-1633, 6/21/05 (postmark 5/18/05, dated 5/16/05); St. Rec. Vol. 4 of 10, La. S. Ct. Letter, 2005-KH-1633, 6/21/05 (showing postmark 5/18/05).

[40] St. Rec. Vol. 6 of 10, Motion for Correction of Illegal Sentence, 8/6/07 (dated 8/1/07).

[41] St. Rec. Vol. 6 of 10, Trial Court Order, 8/14/07.

[42] St. Rec. Vol. 6 of 10, Trial Court Order, 10/4/07; Motion for Reconsideration, 9/18/07.

Pierre sought untimely review of that order in the Louisiana Fifth Circuit on November 19, 2007.[43] The Court denied the application on January 4, 2008, finding no merit to the arguments raised.[44] The Louisiana Supreme Court also denied his subsequent writ application for seeking untimely relief citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995) and as procedurally improper citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[45]

On July 11, 2008, Pierre submitted a writ application, which was filed in the Louisiana Supreme Court on August 8, 2008, seeking reconsideration of his prior *pro se* writ applications to the Louisiana Fifth Circuit under the holding in *State v. Cordero*, 993 So.2d 203 (La. 2008).[46] The *Cordero* opinion addressed alleged procedural improprieties and summary dismissal without judicial review of *pro se* post-conviction writ applications filed in the Louisiana Fifth Circuit between February 8, 1994, and May 21, 2007. Per the *Cordero* procedures adopted by the Louisiana courts, Pierre's writ application was transferred to the Louisiana Fifth Circuit.[47] The Court denied Pierre's request for reconsideration of the transfer order.[48]

---

[43]St. Rec. Vol. 10 of 10, 5th Cir. Writ Application, 07-KH-970, 11/29/07 (postmarked 11/20/07, dated 11/19/07).

[44]St. Rec. Vol. 10 of 10, 5th Cir. Order, 07-KH-970, 1/4/08.

[45]*State ex rel. Pierre v. State*, 996 So.2d 1065 (La. 2008); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2008-KH-0454, 11/10/08; La. S. Ct. Writ Application, 08-KH-454, 2/28/08 (postal meter 2/6/08, dated 2/4/08); St. Rec. Vol. 6 of 10, La. S. Ct. Letter, 2008-KH-454, 2/28/08 (showing postal meter 2/6/08).

[46]St. Rec. Vol. 10 of 10, La. S. Ct. Writ Application, 08-KH-1924, 8/18/08 (postal meter 7/14/08, dated 7/11/08); St. Rec. Vol. 6 of 10, La. S. Ct. Letter, 2008-KH-1924, 8/18/08 (showing postal meter 7/14/08).

[47]*State ex rel. Pierre v. State*, 993 So.2d 1226 (La. 2008); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2008-KH-1924, 10/10/08. The *Cordero* procedure instructed that writs with questionable review history be transferred to the Louisiana Fifth Circuit for reconsideration.

[48]*State ex rel. Pierre v. State*, 1 So.3d 481 (La. 2009); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2008-KH-1924, 2/20/09; Request for Rehearing, 08-KH-1924, 11/7/08 (postal meter 10/21/08, dated 10/20/08).

In compliance with the transfer and *Cordero*, on February 1, 2010, the Louisiana Fifth Circuit denied relief to Pierre after reviewing all of Pierre's prior *pro se*-filed writ applications presented to that Court finding no error in the denial of those writ applications.[49] The Court also included review of a more recently filed writ application, No. 09-KH-386, in which Pierre again challenged his sentence and multiple offender proceeding. The Court found the claims in the newer application to be untimely under La. Code Crim. P. art. 930.8 and *State ex rel. Glover* and for seeking improper post-conviction relief under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*.

On March 2, 2010, Pierre sought review of this ruling in the Louisiana Supreme Court.[50] The Court denied the application without stated reasons on February 25, 2011.[51]

### III.  Prior Federal Petitions

On September 18, 2001, Pierre filed in this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 under Civ. Action No. 01-2896"F"(4). Based on the relief sought and the allegations raised, the Court construed the petition in part as seeking relief under 42 U.S.C. § 1983, and dismissed those claims as frivolous on May 17, 2002.[52] To the extent Pierre sought habeas corpus relief, the Court also addressed the claims under 28 U.S.C. § 2241 and dismissed without prejudice as moot or for failure to exhaust state court remedies.[53] Pierre did not appeal that ruling.

---

[49]St. Rec. Vol. 6 of 10, 5th Cir. Order, 08-WR-964 c/w 09-KH-386, 2/1/10.

[50]St. Rec. Vol. 10 of 10, La. S. Ct. Writ Application, 10-KH-0538, 3/10/10 (dated 3/2/10); St. Rec. Vol. 6 of 10, La. S. Ct. Letter, 2010-KH-538, 3/10/10 (showing postal meter 3/3/10).

[51]*State ex rel. Pierre v. State*, 57 So.3d 1029 (La. 2011); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2010-KH-0538, 2/25/11.

[52]Civ. Action No. 01-2896"F"(4), Rec. Doc. Nos. 7, 8, 9.

[53]*Id*.

Pierre filed a second habeas corpus petition in this Court on January 24, 2006, in Civ. Action No. 06-0164"F"(4). In that petition, Pierre raised three grounds of ineffective assistance of counsel.[54] After the State filed its opposition, Pierre withdrew his one unexhausted claim.[55] The Court thereafter found no merit to Pierre's remaining claims and dismissed the petition with prejudice as meritless on July 12, 2007.[56] The United States Fifth Circuit dismissed Pierre's appeal on December 5, 2007 for want of prosecution.[57]

The records of the United States Fifth Circuit Court of Appeals reflect that, on June 27, 2011, Pierre sought authorization to file a second or successive § 2254 petition.[58] The Court denied the request in part and found that leave was not required for Pierre to seek review of the issue regarding the handling of his remedial review by the Louisiana Supreme Court.[59] In its opinion, the Court indicated the claims to be that "his constitutional rights were violated because the judge who presided over his bench trial and sentencing later participated on panels of the Louisiana Supreme Court that denied his motion for rehearing of an order remanding his case to the Louisiana Fifth Circuit Court of Appeal for remedial review and affirmed that court's post-review decision."[60] As discussed below, this is the same claim that Pierre now raises in the instant petition.

---

[54]Civ. Action No. 06-0164"F"(4), Rec. Doc. Nos. 1, 17.

[55]*Id.*, Rec. Doc. Nos. 13, 14.

[56]*Id.*, Rec. Doc. Nos. 17, 19, 20.

[57]*Id.*, Rec. Doc. No. 30.

[58]Appellate No. 11-30568, Docket Entry 6/27/11; Rec. Doc. No. 4-2, pp. 2-3.

[59]Rec. Doc. No. 4-2, p. 3.

[60]Rec. Doc. No. 4-2, p. 2.

**IV.     Federal Petition**

On September 21, 2011, the clerk of this Court filed Pierre's petition for federal habeas corpus relief in which he argued that he was denied the right to a fair and impartial appellate review in violation of the Due Process and Equal Protection Clauses because of Justice Greg Gerard Guidry's role in addressing his *Cordero* writ application to the Louisiana Supreme Court on August 8, 2008.[61] He specifically argues that Justice Guidry should have recused himself from involvement in addressing his request for rehearing, because he had served as the trial and sentencing judge at Pierre's non-jury criminal trial in 2001.

In its opposition response, the State concedes the timeliness of the filing of this federal petition.[62] The State argues, however, that Pierre failed to exhaust state court remedies on this issue. The State further argues that Pierre's petition fails to raise a cognizable federal claim, and otherwise does not challenge the validity of his conviction as required for federal habeas review.

Pierre filed a traverse to the State's opposition response in which he argues, in relevant part, that the Louisiana law did not provide him with a means by which he could exhaust the claim before proceeding to federal court.[63] He further contends that federal law prohibits a biased judge from presiding in a criminal case, which required that Justice Guidry recuse himself. He also suggests that he is asking the Court to reverse his conviction and therefore properly seeks federal habeas review.

---

[61] Rec. Doc. Nos. 4-1, 8.

[62] Rec. Doc. No. 14.

[63] Rec. Doc. Nos. 18, 19.

V.      **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[64] applies to this petition, which is deemed filed in this court under the federal mailbox rule on August 22, 2011.[65] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State here has conceded the timeliness of the petition. The State however raises the issue of exhaustion, in addition to the lack of merit. There is no doubt from the record, including Pierre's own concession, that Pierre has never presented the issue of Justice Guidry's recusal to any state court, much less in a procedurally proper manner to the Louisiana Supreme Court itself. Nevertheless, because Pierre's claim does not entitle him to federal habeas corpus relief, the Court will proceed to review of the issue in spite of the lack of exhaustion. 28 U.S.C. § 2254(b)(2).

---

[64]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[65]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Pierre's federal habeas petition on September 21, 2011, when the filing fee was paid. Pierre dated his signature on the petition on August 22, 2011. This is presumed to be the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

## VI.     Standards of Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law. The AEDPA's deferential standard of review applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d).

As mentioned previously, Pierre has not presented his recusal issues to the Louisiana state courts. With respect to claims that are not adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under the pre-AEDPA *de novo* standards of review. *Id.*, at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also*, *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

Because Pierre's claim was not addressed by the state courts, this Court would be called upon to consider the claims *de novo*. However, for the reasons that follow, Pierre has not presented a cognizable federal claim for this Court to consider under any standard of review.

## VII.    No Cognizable Federal Issue Raised

Pierre alleges that he was denied due process and equal protection of the law, because Justice Guidry did not recuse himself from addressing Pierre's post-conviction request for rehearing and a post-conviction *Cordero* related writ application.[66] Pierre notes, and the record confirms, that Justice Guidry had previously presided over Pierre's criminal trial in 2001. Then-District Judge

---

[66]Justice Guidry's participation is evidenced by the placement of his initials, "GGG," on the Court's orders. *State ex rel. Pierre v. State*, 1 So.3d 481 (La. 2009); *State ex rel. Pierre v. State*, 57 So.3d 1029 (La. 2011); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2008-KH-1924, 2/20/09; La. S. Ct. Order, 2010-KH-0538, 2/25/11.

14

Guidry presided over the trial without a jury and acted as the sentencing judge as well. Pierre argues that Louisiana law provides that, in a criminal case, a judge "shall be recused" when that judge "has performed a judicial act in the case in another court." La. Code Crim. P. art. 671(A)(5). He further argues that this mandate required Justice Guidry to recuse himself from involvement in any portion of his appellate review, once he was elevated by election to the Louisiana Supreme Court.

As an initial matter, to the extent Pierre complains that Justice Guidry violated Louisiana law, the alleged violation of state law standards of judicial recusal does not merit federal habeas corpus review or relief. *Accord Swarthout v. Cooke*, __ U.S. __, 131 S.Ct. 859, 861 (2011); *see also*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Instead, federal habeas review is limited to reviewing whether a state prisoner is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal habeas corpus court, therefore, will not grant relief unless errors in a state court proceeding resulted in the "denial of fundamental fairness" under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir .1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983)).

To that end, most questions concerning a judge's qualifications to hear a case are not constitutional ones. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986) (citing *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948)); *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008). The due process requirements regarding judicial impartiality are much narrower than the requirements found in recusal statutes and ethical canons. *Richardson v. Quarterman*, 537 F.3d 466, 474 n.4 (5th Cir. 2008). Thus, a violation of a state or federal statute for the failure to recuse a trial judge,

because certain circumstances may give rise to an appearance of bias on the part of the judge, does not necessarily constitute a due process violation. *Id.*, at 474.

Nevertheless, "the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997); *Buntion*, 524 F.3d at 672; *see Samuel v. Warden, Avoyelles Corr. Ctr.*, 51 Fed. Appx. 483 (5th Cir. 2002). Two presumptions weigh in favor of finding that a judicial officer properly discharged his or her duties fairly and impartially: "(1) the presumption of honesty and integrity of the adjudicators; and (2) the presumption that those making decisions affecting the public are doing so in the public interest." *Bigby v. Dretke*, 402 F.3d 551, 560 (5th Cir. 2005) (citing *Bracy*, 520 U.S. at 909).

Presumptive bias has been found to exist in three situations: (1) the decision-maker has a direct or pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision-maker has the dual role of investigating and adjudicating disputes and complaints. *Bigby*, 402 F.3d at 560. To secure federal habeas relief on this basis, the petitioner must "establish that a genuine question exists concerning [the judge's] impartiality." *Id.* at 559 (citing *Liteky v. United States*, 510 U.S. 540, 552 (1994)). An appearance of impropriety rising to the level of a fundamental defect resulting in a complete miscarriage of justice must be shown; absent that level of severity, habeas relief is not cognizable. *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990).

In this case, Pierre has made no such showing. He has not alleged any particular bias or legally unsupported action by Justice Guidry. He has not shown that the Justice acted with personal interest or bias in denying him post-conviction, collateral relief.

Furthermore, as indicated, the focus of Pierre's concerns arises from the Justice's involvement in the denial of a request for rehearing and a post-conviction, collateral writ application under the *Cordero* review. There is no recognized constitutional prohibition for a trial judge to also participate in post-conviction matters. *Accord*, *Clayton v. Blackburn*, 578 F.2d 117, 119 (5th Cir. 1978) ("It is not unfair practice, however, in the state or in the federal system for the judge who presides over a trial or a guilty plea hearing to hear post-conviction motions as well."). In this case, Louisiana law also provides that "[a] judge has full power and authority to act, even though a ground for recusation exists . . ." La. Code Crim. P. art. 673. Thus, there was no state or federal prohibition to Justice Guidry's involvement in the post-conviction process.

It also is well settled that "infirmities in state habeas proceedings do not constitute grounds for relief in federal court . . . because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself." *Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) (citations omitted); *see also*, *Allen v. Nelms*, 174 Fed. Appx. 823, 824 (5th Cir. 2006) (per curiam) ("challenge to . . . state habeas proceeding . . . fails to raise a constitutional question cognizable in federal habeas corpus proceedings.") (citing *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995)). Indeed, the United States Fifth Circuit has made clear that there is no constitutional duty on the part of the State to provide post-conviction remedies. *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987); *see also*, *Lackawana County Dist. Atty. v. Coss*, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing *Penn. v. Finley*, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)). This is so, because an attack on a state habeas proceeding is a challenge to a proceeding collateral to the detention and not the detention itself. *Nichols*, 69 F.3d at 1275.

This is exactly what Pierre is attempting to do in questioning Justice Guidry's role in or failure to recuse himself from the state post-conviction proceedings. Pierre has failed to present a constitutional violation or any basis for this Court to grant habeas relief. He, therefore, is not entitled to federal relief where no constitutional right is at issue.

**VIII. Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Herbert A. Pierre, Jr.'s petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[67]

New Orleans, Louisiana, this 31st day of January, 2012.

*[signature]*

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[67]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.